THE SOUTHERN STAR LIGHTNING ROD COMPANY *vs.* DUVALL.

1. When a person not a party to an execution nor the holder of any
   fund belonging to the defendant, advances his own money to obtain
   a transfer of the execution, with an intention at the time not to
   extinguish it, but to keep it open against the defendant until reim-
   bursed for the outlay, the transaction (however it may be denomi-
   nated afterwards by the witnesses) is not a payment but a purchase;
   and though the person receiving the money and making the transfer
   has power to collect, yet if he has no power to sell absolutely as
   against the plaintiff, and the plaintiff has never ratified by accept-
   ing the money or otherwise, there is no satisfaction, and his title
   remains unimpaired.
2. The attorney of record is empowered by law to transfer an execu-
   tion, subject to ratification by his client, but whoever deals with
   the attorney or his transferee takes the risk of the client's failure or
   refusal to ratify.

JACKSON, Justice, dissented.

Executions. Levy and sale. Payment. Attorney and client. Before Judge UNDERWOOD. Floyd Superior Court. March Term, 1879.

On February 28, 1873, an execution in favor of the Lightning Rod Company against Ayer, Duvall & Turner, was issued from the clerk's office of Floyd superior court, for $135.00 principal, $11.85 interest, and costs. On it were credits amounting to $50.00; also the following entries:

"For value received the within *fi. fa.* is hereby controlled and transferred to A. P. McCord. August 23d, 1873.
(Signed) DUNLAP SCOTT,
Plff's Att'y."

"Satisfied in full, principal and interest.
(Signed) A. P. McCORD."

A levy being made upon the property of Duvall, he filed an affidavit of illegality setting up payment. An issue being formed as to the fact of payment, the plaintiff read in evidence the execution, with the entries thereon, and proved by Hooker, its business manager, that the plaintiff did put in Dunlap Scott's hands for collection an account for $135.00, but had never received from Scott any remittance thereon; that plaintiff had never authorized Scott to transfer the execution to any person, and had never ratified the transfer to McCord or to any one else.

Duvall, the defendant, testified, in brief, as follows: I got McCord to go to Scott, who was the attorney for the plaintiff and who was then pressing me on the *fi. fa.*, and pay it off for me. He advanced the money for me, as I did not have it at that time. I afterwards refunded to McCord what he had paid for me on the execution; also paid the clerk his costs. I know nothing about the transfer on the execution from Scott to McCord.

McCord testified that in the summer of 1873 Duvall got him to pay off an execution held by the plaintiff against him, in the hands of Dunlap Scott; that as a matter of

precaution he took a transfer of the execution to himself till Duvall should pay him back the money. That he paid the principal and interest of the claim, all of which Duvall refunded to him; that he did not make one cent on the transaction; that he did it as a matter of accommodation to Duvall and not as an investment.

Turner testified that he was present when McCord paid the execution to Scott for Duvall; that the latter did not have the money to pay the execution, and McCord was to pay it for him; that at the suggestion of witness, McCord, when he paid the money, took a transfer of the execution to keep it open for his protection.

The jury found the issue in favor of the defendant. Whereupon the plaintiff moved for a new trial because the verdict was contrary to evidence and to law, and because the court erred in charging the jury as follows: " If McCord paid the *fi. fa.* for Duvall, and did not purchase the *fi. fa.*, that would be a payment and satisfaction of the *fi. fa.*," there being no evidence to justify such instruction.

The motion was overruled, and plaintiff excepted.

C. A. THORNWELL, for plaintiff in error.

WRIGHT & FEATHERSTON; JOHN H. REESE, for defendant.

BLECKLEY, Justice.

1. Did McCord pay the *fi. fa.*, or did he purchase it? He was not a party to it, nor did he have in hand any fund belonging to the defendant. The latter requested him to advance the money and pay off the *fi. fa.*, and this he promised to do; but did he do it? Did he not change his mind, and conclude to purchase the *fi. fa.* and keep it open against the defendant, so that he might, if necessary, enforce it for his reimbursement? It matters not how late he underwent this change of purpose, if he did in fact undergo it, and if he acted accordingly in his dealings with the plaintiff's attorney, at

the time of parting with his money.  Grant that so acting would involve a breach of faith, he had incurred only the obligation which a bare promise imposes, not that which attaches to a binding contract, no consideration for the promise having passed.  To violate even a naked promise deliberately made, is a moral delinquency more or less reprehensible; but the law does not charge itself with the enforcement of naked promises—leaving them to the voluntary decisions of private conscience.  Moreover, it is not every deviation from the terms of a promise that amounts to a breach of it.  The spirit of a promise is often as well kept by departing somewhat from the letter, as by the most literal performance.  Regard is to be had to the benefit which was in contemplation when the promise was made, and if there is reasonable certainty that the benefit will equally follow from a free as from a close method of performance, either method may, in many instances, be adopted without the slightest infidelity to moral principle.  On strictly ethical grounds, there is undoubtedly great danger in varying this or that detail in the mode of performance, and anything like a habitual practice of doing so would be pernicious; but a just recognition and observance of the correct general rule will not oblige us to treat the rule as one without exceptions.  There are exceptions; and the explanation of McCord's conduct in the present case lies in the fact that he deemed himself at liberty to make this one of the number.  Whether he judged rightly or not, there are unmistakable indications that he so judged.  The evidence demonstrates that in aim and purpose he was true, throughout, to the object for which he undertook to advance the money and pay off the *fi. fa.*  That object was to relieve the defendant from the pressure which the plaintiff's attorney was exerting upon the defendant for the money.  It was in consequence of this pressure that the defendant applied to McCord to befriend him.  No less conclusive is the evidence that McCord, after making the promise, and whilst engaged in the act of complying with it, embraced the

opinion that the object could be as well subserved by purchasing the *fi. fa.* as by paying it off. To this he was moved by the suggestion of the witness Turner, a suggestion that was accepted and acted upon in a way to leave no vestige of uncertainty that McCord and the attorney both intended that the *fi. fa.* should not be extinguished, but that it should remain open in the hands of McCord, as his property, to be enforced by him at his pleasure. No doubt McCord intended to indulge upon the *fi. fa.* to the same extent as he would have indulged upon an account for a loan of the money, if his original purpose of making a loan had been carried out. He supposed he was giving his friend all the substantial fruits of the promised accommodation, and at the same time securing himself for his outlay somewhat better than was thought of in the beginning. Most probably he had not the slightest doubt of his moral right to take a transfer of the *fi. fa.*, or of the attorney's legal authority to execute it. But the fact of transfer is indisputable, and that fact is controlling. In Harbeck *vs.* Vanderbilt, 20 N. Y., 395, the court said : " It is equally clear, that if the money be paid, not by one who is a party to the judgment and liable upon it, but by some third person, the judgment will be extinguished or not, according to the intention of the party paying. The taking of an assignment, whether valid or void, affords under all circumstances, unequivocal evidence of an intention not to satisfy the judgment." To intend a payment, strictly and properly, of any instrument, and to take a transfer of it at the same time, would be in the highest degree absurd. What could McCord possibly have wanted with the *fi. fa.* if it was a paid and extinct paper ? The proper evidence of payment would have been a receipt from the attorney ; and the attorney should not only have entered the satisfaction on the *fi. fa.* and returned the *fi. fa.* to the clerk's office from whence it issued, but, under the rules of court, he would have been subject to a fine if he failed to report the collection for entry on the execution docket, etc. See Rules of Superior

Court, "Attorneys." Nothing whatever was done on the line of payment, but every step taken was on the line of purchase; the last of which steps was the entry of satisfaction, signed by McCord, the transferee. This entry is without date, but there is no evidence that it was made before the actual payment of the *fi. fa.* by the defendant to McCord; the presumption is that it was made then, for the import of the entry is that the satisfaction was made to McCord, he being the person who acknowledges it. Though the payment made by McCord to the attorney is called by the witnesses a payment *of* the *fi. fa.*, it was really a payment *for* the *fi. fa.* on a contract of sale and purchase, which contract was reduced to writing, signed, and delivered with the *fi. fa.* itself. The misapplication of terms in the parol evidence cannot alter the facts, nor vary their legal significance or effect. 63 *Ga.*, 134 to 139; 62 *Ib.*, 82, 83.

Having thus seen that the true relation of McCord to the *fi. fa.* was that of purchaser and transferee, and that there was no exercise by the attorney of his power to collect the *fi. fa.* and extinguish it, the effect of the transaction turns upon the naked legal question whether the attorney could bind his client by the assignment for full value, the evidence being positive that he did not pay over the money, and that the client did not in any way ratify the assignment. An unauthorized sale of the client's property would not divest his title. 8 *Ga.*, 421; 12 *Ib.*, 337. And a payment by the debtor to the assignee, would be no satisfaction or discharge. Wilson *vs.* Wadleigh, 36 Me., 496.

2. The case last cited, as well as numerous others, among them Campbell's Appeal, 29 Penn. St., 401, are in point on the general proposition, that to assign an execution is not within the scope of the general authority of the plaintiff's attorney. Our Code, however, deals with the question and settles it for us in these terms: "The transfer of a judgment or execution by the attorney of record shall be good to pass the title thereto as against every person except the plaintiff or his assignee without notice. The ratification

17

by the plaintiff shall estop him also from denying the transfer. The receiving of the money shall be such a ratification." Code, §3598. There can be no rational construction of this language which does not hold that whoever deals with the attorney or with his assignee, takes the risk of the client's failure or refusal to ratify. That risk, in this case, was upon McCord in making the purchase, and upon Duvall, the defendant, in afterwards making payment to McCord. And as the plaintiff has never ratified, the verdict of the jury is contrary to law and evidence, and the superior court erred in not granting a new trial.

The hardship of the particular case is no reason for melting down the law. For the sake of fixedness and uniformity, law must be treated as a solid, not as a fluid. It must have, and always retain, a certain degree of hardness, to keep its outlines firm and constant. Water changes shape with every vessel into which it is poured; and a liquid law would vary with the mental conformation of judges, and become a synonym for vagueness and instability.

Judgment reversed.

WARNER, Chief Justice, concurred, but furnished no written opinion.

JACKSON, Justice, dissenting.

Duvall filed an affidavit of illegality to the plaintiff's *fi. fa.*, on the ground that it had been paid off by him. The jury found a verdict sustaining this affidavit, the plaintiff made a motion for a new trial, which was overruled and he excepted.

Fifty dollars was paid on the *fi. fa.* by Duvall in person, thirty in March and twenty in June, 1873. In August of the same year Duvall got McCord to pay for him the balance and have the *fi. fa.* satisfied. The balance was paid to Dunlap Scott, plaintiff's attorney of record, by McCord, to whom also the other payments were made by Duvall. But McCord took from Scott the following transfer, without the knowledge or consent of Duvall:

"For value received· the within *fi. fa.* is hereby controlled and transferred to A. P. McCord, August 23, 1873. DUNLAP SCOTT, plaintiff's attorney;" and entered immediately under this transfer was the following : " Satisfied in full, principal and interest.  A. P. McCORD."  N    ate ·is given to this satisfaction of the *fi. fa.*  Scott died, failing to pay the money over to the plaintiff.  Duvall paid McCord the advance he had made before the plaintiff moved against him.

Duvall swore that he got McCord to go to Dunlap Scott, who was pressing him *on the fi. fa., and pay the execution for him,* and afterwards paid him back.

McCord swore that Duvall got him to *pay off the fi. fa.* for him to Scott, which he did, and as matter of precaution took the transfer—but not as an investment.

Turner swore that he was present when McCord *paid the fi. fa. to Scott for Duvall.*  The way of it was this, that Duvall did not have the money to pay the *fi. fa.,* McCord was *to pay the money for Duvall,* and at the suggestion of witness when he paid the money to Scott, took a transfer of the execution to himself to keep it open for his protection.

The jury found that the execution was paid by Duvall and sustained the illegality.

The court charged that " if McCord paid the *fi. fa.* for Duvall and did not purchase the *fi. fa.,* that would be a payment and satisfaction of the *fi. fa.,*" and this, and that the verdict is against law and without evidence to support it, are the errors complained of.

While it is true that McCord could not purchase the *fi. fa.* from Scott, and Scott could not sell and transfer it to him so as to divest the title of the plaintiff in execution, Code, §3598, yet it is equally true that Duvall could pay it off to Scott, the attorney of record, and that would satisfy the *fi. fa.,* and what Duvall could do himself, he could do by another as his agent ; and if his agent paid the *fi. fa.* for him, and was engaged to do that thing, and in doing so went beyond the scope of his authority and did with Scott an illegal thing in buying the *fi. fa.* and having it trans-

ferred, Duvall is not bound by the illegal part of the business. The effect, however, of McCord's evidence and that of the others present, is that he did not buy the execution but satisfied it as soon as Duvall paid him back his money, and that was before the plaintiff asserted dominion again over it and pressed it for collection. If Duvall or the plaintiff is to suffer from the failure of Scott to do his duty in not paying over the money and in transferring the execution, the plaintiff who made Scott his collecting officer, and put it in his power to do the wrong, ought to suffer rather than Duvall be made to pay the money twice.

Besides, who knows whether the plaintiff got the money and thereby ratified the act of Scott? Scott's mouth is closed in death; and the other party, his client, ought not to be heard to say, especially after such a lapse of time, that the money was not received. The plaintiff, a corporation, shows that it was not received only by a book-keeper, and that only to the best of the book-keeper's knowledge and belief. Payment to the attorney of record is payment to the plaintiff in *fi. fa.*, and the presumption is that the plaintiff got it, so far as third persons who deal with the attorney are concerned; and after Scott is dead and McCord has paid the execution off for Duvall, and Duvall has paid him back just what he paid for him, and after such a lapse of time—about six years—it is, in my judgment, inequitable to allow this recovery from Duvall and coerce him, under mere shadowy forms of law, without substance that I can see, to pay the debt twice, to the plaintiff's own attorney of record once, and to the plaintiff now.

I think that the true issue was presented substantially to the jury, to-wit, was this payment by McCord made for Duvall, or did he purchase the *fi. fa.* for himself; that the jury decided this issue of fact that it was paid for Duvall; that there is evidence to support the finding; that the presiding judge approved it; and that the verdict and judgment accord with the law, and all the equities of the case.

Therefore I dissent from the judgment of reversal.